1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INNOVATIVE SPORTS MANAGEMENT, INC., | Case No. 22-cv-07136-JSC |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |
| v. | |
| FERNANDO VASQUEZ NUNEZ, et al., | Re: Dkt. No. 26 |
| Defendants. | |

Innovative Sports Management, Inc., d/b/a Integrated Sports Media ("Plaintiff") alleges Fernando Vasquez Nunez ("Nunez"), Humberto Vasquez ("Vasquez"), and Emelina's Peruvian Restaurant ("Emelina's") (collectively, "Defendants") violated Plaintiff's domestic commercial exhibition rights when Defendants broadcast the *Peru v. Ecuador Soccer Match* (the "Program") on Tuesday, February 1, 2022 at Emelina's Peruvian Restaurant in San Carlos, California.  (Dkt. No. 1.) [1]

Plaintiff's motion for default judgment is now pending before the Court.  (Dkt. No. 26.) After carefully considering Plaintiff's written submission, the Court GRANTS Plaintiff's motion for default judgment against Defendants.  Specifically, the Court GRANTS relief under 47 U.S.C. § 553 as to Emelina's and holds Nunez and Vasquez jointly and severally liable.  The Court also GRANTS Plaintiff's request for relief for conversion as to Emelina's, but DENIES Plaintiff's request for relief for conversion as to Nunez and Vasquez.  Plaintiff must file its motion for attorneys' fees and costs within 14 days of the entry of judgment.

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

## BACKGROUND

### A. Complaint Allegations

Emelina's is a restaurant in San Carlos, California.  (Dkt. No. 1 ¶ 7.)  Nunez is Chief Executive Officer ("CEO") and Director of Emelina's.  (*Id.* ¶ 10.)  Vasquez is Emelina's Chief Financial Officer ("CFO").  (*Id.* ¶ 12.)

Plaintiff, a New Jersey Corporation, distributes sports and entertainment programming.  (Dkt. No. 1 ¶¶ 6, 21.)  Plaintiff holds the exclusive nationwide commercial distribution rights to the Program.  (*Id.* ¶ 21.)  Commercial entities license limited exhibition rights from Plaintiff.  (*Id.* ¶ 22.)

Plaintiff used a satellite uplink to transmit the program to cable and satellite companies, who in turn transmitted the Program to the sublicensees.  (*Id.* ¶ 25.)  Plaintiff alleges Defendants knowingly intercepted and then displayed the Program at Emelina's Peruvian Restaurant, or instructed or allowed the employees of Emelina's Peruvian Restaurant to do so, without authorization.  (*Id.* ¶ 15.)  Accordingly, Plaintiff brings claims for violation of the Federal Communications Act, 47 U.S.C. § 605, the Cable & Television Consumer Protection and Competition Act, 47 U.S.C. § 553, California Business & Professions Code § 17200, and conversion under state law.  (*Id.* ¶¶ 20-52.)  Plaintiff 's default motion seeks statutory and enhanced damages under §605, damages resulting from conversion, attorney's fees, and costs.  (Dkt. No. 26 at 3.)

In support of its motion for default judgment, Plaintiff submits declarations and exhibits which bear on the merits of Plaintiff's claims and the sufficiency of its complaint for purposes of default judgment.  (Dkt. Nos. 26-2; 26-3; 26-4.)  "Rule 55 gives the court considerable leeway as to what it may require as a prerequisite to the entry of default judgment."  *TeleVideo Systems, Inc*. *v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).  Accordingly, the Court exercises its discretion to consider this additional evidence.

Erika Galvez declares they viewed the Program at Emelina's Peruvian Restaurant on February 1, 2022.  (Dkt. No. 26-2.)  Doug Jacobs, president of Innovative Sports Management, testifies Plaintiff did not license Emelina's to display the game and that the Program could not be

2

1    mistakenly, innocently, or accidentally intercepted.  (Dkt. No. 26-4 ¶¶ 7, 9.)  Plaintiff also submits

2    exhibits from the California Secretary of State website, the California Department of Alcoholic

3    Beverage Control, and the City of San Carlos Public Information Business Records.  (Dkt. No. 26-

4    3 at 4-23.)  These exhibits show the various connections Nunez and Vasquez have to Emelina's

5    including their statuses as CEO and CFO respectively.  (*Id.*)

### B.  Procedural Background

7         Plaintiff filed the Complaint on November 14, 2022.  (Dkt. No. 1.)  Nunez and Vasquez

8    were served on January 26, 2023 and Emelina's was served on January 30, 2023.  (Dkt. Nos. 13-

9    15.)  On March 8, 2023, the clerk entered default against Defendants.  (Dkt. No. 21.)  Plaintiff

10   now seeks default judgment against Defendants.  (Dkt. No. 26.)

## DISCUSSION

12        Generally, after entry of default, a party is entitled to apply to the court for default

13   judgment when a party has failed to plead or defend.  Fed. R. Civ. P. 55(b)(2).  First, courts have a

14   duty to examine subject matter jurisdiction, personal jurisdiction, venue, and service of process as

15   to claims against a non-appearing party where default judgment is sought.  *In re Tuli*, 172 F.3d

16   707, 712 (9th Cir. 1999).  Second, the court may exercise its discretion in deciding whether to

17   enter default judgment based on the factors in *Eitel v. McCool*, 782 F.2d 1470, 72 (9th Cir. 1986).

18   Third, a plaintiff's request for statutory damages, enhanced damages, and attorneys' fees must not

19   differ or exceed what is sought in the pleadings and must be available as a matter of law.  Fed. R.

20   Civ. P. 54(c).  The Court addresses each issue in turn.

### I.    JURISDICTION & SERVICE OF PROCESS

22        This Court has jurisdiction over Plaintiff's claims and service of process was proper.

### A.  Subject Matter and Personal Jurisdiction

24        Courts have a duty to examine both subject matter and personal jurisdiction as to claims

25   against a non-appearing party when default judgment is sought.  *In re Tuli*, 172 F.3d at 712

26   ("When entry of judgment is sought against a party who has failed to plead or otherwise defend, a

27   district court has an affirmative duty to look into its jurisdiction over both the subject matter and

28   the parties.").  Here, Plaintiff brings two claims under federal law: 47 U.S.C. § 605 and § 553.

United States District Court
Northern District of California

(Dkt. No. 1 at 8-13.)  Thus, the Court has federal subject matter jurisdiction over those claims.  28 U.S.C. § 1331.  As a result, the Court can exercise supplemental jurisdiction over the remaining state law claims, counts three and four, because they arise from the same controversy.  28 U.S.C. § 1367(a); (Dkt. No. 1 at 13-16).  Personal jurisdiction exists because Defendants' alleged actions took place in San Carlos, California.  *See International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945); (Dkt. No. 1 at 2.)

**B.  Service Of Process**

Defendant was properly served with notice of the action.  *See Penpower Tech. Ltd. v. S.P.C. Tech.*, 627 F. Supp. 2d 1083, 1088 (N.D. Cal. 2008).  An individual may be served by following state law in the state where the court is located or where service is made.  Fed. R. Civ. P. 4(e)(1).  After exercising reasonable diligence to effectuate personal service, California allows for substitute service at a usual place of business on a person apparently in charge, and subsequently mailing service to the address.  Cal. Civ. Proc. Code § 415.20(b).  Two or three attempts at personal service establish reasonable diligence.  *Bein v. Brechtel-Jochim Grp., Inc.*, 6 Cal. App. 4th 1387, 1391-92 (1992).  "The evident purpose of Code of Civil Procedure section 415.20 is to permit service to be completed upon a good faith attempt at physical service on a *responsible person* . . .. Service must be made upon a person whose relationship with the person to be served makes it more likely than not that they will deliver process to the named party."  *Hearn v. Howard*, 177 Cal. App. 4th 1193, 1202–03 (2009) (cleaned up).

Here, service of process was valid because Plaintiff effectuated substitute service at Defendants' usual place of business with a person apparently in charge.  Plaintiff attempted to serve Vasquez and Nunez at Emelina's Peruvian Restaurant twice.  (Dkt. Nos. 13-14 at 4.)  Both attempts at service resulted in the cashier informing Plaintiff that Nunez and Vasquez were not at the restaurant.  (*Id.*)  After two unsuccessful attempts, Plaintiff served Patricia Salazar, a 55-year-old waitress at Emelina's, on January 26, 2023, at 3:08pm.  (*Id.*)  The process server declared Salazar was a person apparently in charge at the time of service.  (*Id.*)  Similarly, after unsuccessfully attempting to serve Emelina's three times, substitute service was effectuated by serving Tiffany Isaula, a 25-year-old cashier at Emelina's Peruvian Restaurant, on January 30,

4

1   2023, at 2:09pm.  (Dkt. No. 15 at 3-5.)  The process server declared Isaula was a person

2   apparently in charge at the time of service.  (*Id.*)  The documents were subsequently mailed as

3   required by rule 415.20(b).  (Dkt. Nos. 13-15.)  A cashier and waitress at Emelina's are

4   sufficiently responsible people who would likely deliver process to Defendants and inform them

5   of the pending action.  Therefore, Defendants were properly served with notice of the action under

6   California law.  *See Joe Hand v. Bernal,* No. 1:12-CV-01512-AWI, 2013 WL 1402464 at *2 (E.D.

7   Cal. Apr. 5, 2013). Defendants were also served with notice of the default on March 10, 2023, by

8   mail sent to Emelina's restaurant.  (Dkt. No. 23.)

9   **II.      DEFAULT JUDGMENT**

10          After entry of default, the Court may grant default judgment on the merits of the case.

11  Fed. R. Civ. P. 55.  "The district court's decision whether to enter a default judgment is a

12  discretionary one," *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980), guided by the

13  following factors:

> (1) the possibility of prejudice to the plaintiff[;] (2) the merits of
> plaintiff's substantive claim[;] (3) the sufficiency of the complaint[;]
> (4) the sum of money at stake in the action; (5) the possibility of a
> dispute concerning material facts; (6) whether the default was due to
> excusable neglect[;] and (7) the strong policy underlying the Federal
> Rules of Civil Procedure favoring decisions on the merits.

18  *Eitel*, 782 F.2d at 1471–72.  Here, the Court finds the *Eitel* factors weigh in favor of granting

19  default judgment.

20          **A.  Possibility of Prejudice to Plaintiff**

21          The first *Eitel* factor considers the possibility and extent to which Plaintiff will suffer

22  prejudice, such as being left without a legal remedy, if the Court declines to enter default

23  judgment.  Here, as a result of Defendants' failure to respond to Plaintiff's Complaint, the only

24  recourse for its claims is default judgment.  *See, e.g.*, *Amazon.com, Inc. v. Expert Tech Rogers Pvt.*

25  *Ltd.*, No. 20-CV-07405-PJH-JSC, 2021 WL 4461601, at *4 (N.D. Cal. Sept. 22, 2021).

26          **B.  Merits of Plaintiff's Substantive Claim and Sufficiency of the Complaint**

27          The second and third factors consider the merits and sufficiency of Plaintiff's claims.

28  Entry of default has been entered, thus all well-plead factual allegations, other than damages, are

1    assumed to be true.  *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).  Plaintiff

2    seeks default judgment on two claims: (1) the unauthorized publication or use of communications

3    under § 605 and (2) conversion.  (Dkt. No. 26 at 3.)

### 1.  Unauthorized Publication or Use of Communications

#### a.  Liability Under Section 553 Rather Than Section 605

6         While the complaint seeks judgment under § 553 and § 605, under § 605 commercial

7    establishments are prohibited "from intercepting and broadcasting to its patrons satellite cable

8    programming." *J & J Sports Prods., Inc. v. Mosley*, No. 10–5126, 2011 WL 2066713, at *3 (N.D.

9    Cal. Apr. 13, 2011); *see also* 47 U.S.C. § 605.  In contrast, 47 U.S.C. § 553 "prohibits a person

10   from intercepting or receiving or assisting in intercepting or receiving any communications service

11   offered over a cable system." *Id.*  "A signal pirate violates Section 553 if he intercepts a cable

12   signal, [but] he violates [Section] 605 if he intercepts a satellite broadcast." *J & J Sports Prods.,*

13   *Inc. v. Manzano*, No. 08–01872, 2008 WL 4542962, at *2 (N.D. Cal. Sept. 29, 2008).  "Plaintiff

14   may not recover under both § 605 and § 553" because it is not possible to intercept both a cable

15   signal and a satellite broadcast in a single act. *Id.*

16        Here, Plaintiff alleges Defendants unlawfully intercepted and published the Program.

17   (Dkt. No. 1 ¶ 26-28.)  Erika Vanessa Galvez witnessed the Program presented at Emelina's

18   Peruvian Restaurant.  (Dkt. No. 26-2.)  Plaintiff's allegation, when taken as true and considering

19   the attached declaration, sufficiently states a claim for the unauthorized publication or use of

20   communications.

21        But Plaintiff does not allege *how* Defendants obtained the program.  (Dkt. No. 1.)  The

22   Complaint only alleges the Program *originated* via satellite uplink and was transmitted to both

23   cable systems and satellite companies as per Plaintiff's sub-licensing agreements, and does not

24   mention the method of interception and resulting transmission.  (Dkt. No. 1 ¶ 25.)  Additionally,

25   "that violations of both 605 and 553 were alleged in the Complaint indicates that Plaintiff is

26   unable to specify the type of transmission." *J & J Sports Prods., Inc. v. Coria*, No. C 12-05779

27   JSW, 2015 WL 1089044, at *4 (N.D. Cal. Feb. 27, 2015).

28

United States District Court
Northern District of California

1    In light of Plaintiff's allegations and supporting declaration, that Defendants used a cable

2    system is much more likely because a cable box is much easier to hide than a satellite dish.  *See G*

3    *& G Closed Cir. Events, LLC v. Macias*, No. 20-CV-02916-BLF, 2021 WL 2037955, at *4 (N.D.

4    Cal. May 21, 2021).  The allegations and declaration do not support judgment under § 605.  While

5    Plaintiff did not move for default judgment under § 553, the Court will construe Plaintiff's motion

6    as doing so rather than denying the motion without prejudice to renewal to seek judgment under

7    § 553.  The Court grants relief under § 553 as the method of interception and transmission is

8    unknown as a result of Defendants' non-appearance and cable is a more likely method than

9    satellite.  *See Mosley,* No. C-10-5126 CW EMC, 2011 WL 2066713, at *4 (collecting cases).

10                           **b.   Vicarious Liability Under Section 553**

11    The Court finds the copyright standard of vicarious liability applies to violations of § 553

12    and the allegations as to Nunez and Vasquez meet this standard.

13                    **i.   The Copyright Standard Applies to Section 553**

14    The Court finds Vasquez and Nunez are vicariously liable if they "(1) . . . had a right and

15    ability to supervise the infringing activities and (2) had an obvious and direct financial interest in

16    those activities."  This standard is borrowed from the copyright context.  *Joe Hand Promotions,*

17    *Inc. v. Yakubets*, 3 F. Supp. 3d 261, 293 (E.D. Pa. 2014).  In the copyright context the Supreme

18    Court has noted, "[a]lthough [t]he Copyright Act does not expressly render anyone liable for

19    infringement committed by another, these doctrines of secondary liability [(vicarious and

20    contributory)] emerged from common law principles and are well established in the law."  *Metro–*

21    *Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.,* 545 U.S. 913, 930–31 (2005) (cleaned up); *see*

22    *also, Innovative Sports Mgmt., Inc. v. Valenzuela*, No. 19CV02785JSWJCS, 2021 WL 5238592

23    (N.D. Cal. Aug. 30, 2021), *report and recommendation adopted*, No. 19-CV-02785-JSW, 2021

24    WL 5238591 (N.D. Cal. Oct. 8, 2021) (collecting cases applying copyright standard of individual

25    liability to § 553).

26    Similarly, § 553 does not expressly render individuals liable for the violations of others;

27    however, it follows that common law principles may apply in this context as well. Copyright is

28    similar to § 553 in that the statute "provides for actual damages, statutory damages, enhanced

United States District Court
Northern District of California

7

1    damages for willful infringement, and reduced damages for accidental, nonnegligent infringement,

2    and does so with a similar structure and similar wording." *Yakubets*, 3 F. Supp. 3d at 294; *see* 17

3    U.S.C. § 504(b), (c).  Therefore, the Court applies the same standard to the violation of § 553.

### ii.    Nunez and Vasquez are Individually Liable

5        To establish individual liability under this standard, a plaintiff must allege: "(1) the right

6    and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing

7    activity." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007).  "[A]

8    plaintiff must allege more than an officer's mere right and ability to supervise the corporation's

9    conduct generally" and  ". . . must allege that the defendant had supervisory power over the

10    infringing conduct itself." *Netbula, LLC v. Chordiant Software, Inc.*, No. C 08-00019 JW, 2009

11    WL 750201, at *3 (N.D. Cal. Mar. 20, 2009).

12        Here, the Complaint states Nunez was the CEO, Director, and stockholder of Emelina's

13    and as such had the right and ability to supervise the activities of Emelina's Peruvian Restaurant.

14    (Dkt. No. 1 ¶ 10.)  The Complaint also alleges Vasquez had a right and ability to supervise the

15    infringing activities because Vasquez was the Chief Financial Officer ("CFO") of Emelina's

16    Peruvian Restaurant and as such had the right and ability to supervise the activities of Emelina's

17    Peruvian Restaurant.  (*Id.* ¶ 12.)  Further, the Complaint contends Nunez and Vasquez

18    "specifically directed or permitted the employees… to unlawfully intercept, receive and publish"

19    the Program "or intentionally intercepted, received, and published the Program… themselves."

20    (*Id.* ¶ 15) (cleaned up).  Plaintiff alleges both a general ability to supervise based on their positions

21    as CEO and CFO and a specific ability to supervise the infringing conduct itself.  The Court finds

22    when taken together these allegations establish the supervision requirement.

23        The Complaint also alleges the unlawful broadcast resulted in increased profits for

24    Emelina's Peruvian Restaurant.  (*Id.* ¶ 18.)  This allegation, when considering the California

25    Secretary of State Statement of Information listing Nunez and Vasquez as CEO and CFO

26    respectively, creates a reasonable inference financial benefits flowed to them as a result of the

27    violation.  (Dkt. No. 26-3.); *see Yakubets*, 3 F. Supp. 3d at 300.  Thus, Plaintiff's allegations

28    establish Nunez and Vasquez each had an obvious and direct financial interest in the infringing

United States District Court
Northern District of California

1    activities by virtue of their alleged positions as CEO and CFO and the alleged increased profits the

2    Program created for Emelina's Peruvian Restaurant. *See Ellison v. Robertson*, 357 F.3d 1072,

3    1078-79 (9th Cir. 2004) (holding financial benefit need not be substantial to establish financial

4    interest). While these allegations are largely formulaic, when taken as fact they create a

5    reasonable inference of both elements of vicarious liability. *See Yakubets*, 3 F. Supp. 3d at 294.

6    Therefore, the Court finds Defendants are each liable under Plaintiff's § 553 claim and thus

7    Plaintiff's allegations sufficiently state a claim as to each.

                              **2.  Conversion**

8

9              Plaintiff sufficiently states a claim for conversion. A California claim for conversion

10   requires a plaintiff to show ownership or right to possession of property, wrongful act or

11   disposition of the property right, and damages. *Tyrone Pac. Int'l, Inc. v. MV Eurychili*, 658 F.2d

12   664 (9th Cir. 1981); Cal. Civ. Code § 3336. Here, Plaintiff alleges ownership of the exclusive

13   nationwide commercial distribution rights to the Program. (Dkt. No. 1 ¶ 21.) Plaintiff also alleges

14   Defendants wrongfully intercepted and published the Program at Emelina's Peruvian Restaurant.

15   (*Id.* ¶ 26.) The attached declaration states Erika Vanessa Galvez witnessed the Program as it was

16   published at Emelina's Peruvian Restaurant. (Dkt. No. 26-2.) Additionally, Plaintiff has

17   requested damages for conversion in the amount of the value of the property at the time of

18   conversion, $550.00. (Dkt. No. 26 at 3.) Thus, Plaintiff's allegations, when taken as fact and

19   considering the attached declaration, sufficiently state a claim for conversion.

20             Plaintiff's Complaint establishes conversion liability for Emelina's, but not as to Nunez

21   and Vasquez. "Directors or officers of a corporation do not incur personal liability for torts of the

22   corporation merely by reason of their official position, unless they participate in the wrong or

23   authorize or direct that it be done." *United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.,* 1 Cal.

24   3d 586, 595 (1970).

25             Here, Plaintiff's Complaint alleges Nunez and Vasquez "specifically directed or permitted

26   the employees" to engage in the illegal conduct. (Dkt. No. 1 ¶ 15.) However, these allegations are

27   conclusory and do not allege facts plausibly supporting an inference Nunez and Vasquez

28   authorized the illegal conduct. The standard to establish individual liability as to conversion

United States District Court
Northern District of California

1    requires specific direction or permission.  This standard is higher than the standard of individual

2    liability in the copyright context where an ability to supervise is all that is required.  While, as

3    discussed above, the allegations taken in conjunction with the California Secretary of State

4    Statement of Information listing Nunez and Vasquez as CEO and CFO may create a reasonable

5    inference they had the *ability* to supervise, they do not sufficiently allege they authorized the

6    unlawful conduct.  (Dkt. No. 26-3.)  As such, Nunez and Vasquez may not be found liable merely

7    by virtue of their official positions without factual allegations establishing their direction or

8    authorization.  *See United States Liab. Ins.,* 1 Cal. 3d at 595.  Therefore, only Emelina's is liable

9    under Plaintiff's conversion claim and thus Plaintiff's allegation sufficiently states a claim for

10   conversion as to Emelina's.

11        **C.  Sum of Money at Stake**

12        The fourth *Eitel* factor considers the sum of money at stake in relation to the seriousness of

13   the defendant's conduct.  *Eitel,* 782 F.2d at 1471–72.  The factor weighs against default judgment

14   when the amount of money is unreasonably large considering the defendant's actions.  *Tech. LED*

15   *Intell. Prop., LLC v. Revogi, LLC*, No. 18-CV-03827-JSC, 2019 WL 2716610, at *4 (N.D. Cal.

16   June 27, 2019).  "Conversely, default judgment may be appropriate where it is tailored to the

17   defendant's specific misconduct."  *Id.* (internal quotation marks and citation omitted). The Court

18   need not accept as true allegations related to damages.  *Geddes v. United Fin. Grp.*, 559 F.2d 557,

19   560 (9th Cir. 1977).  In California, conversion damages are based on the value of the property at

20   the time of the conversion.  Cal. Civ. Code § 3336.

21        Here, under § 605, Plaintiff requests $3,000 in statutory damages and $21,000 in enhanced

22   statutory damages.  (Dkt. No. 26 at 3.)  Plaintiff also requests reasonable costs and attorney's fees

23   under the statute.  (*Id.*)  Additionally, Plaintiff requests $550.00 in conversion damages, the

24   amount Defendants would have had to pay to broadcast the program lawfully.  (*Id.*)  "The

25   requested statutory damages are tailored—by the legislatures—to the underlying

26   misconduct."  *Vera v. FlexShopper, LLC*, No. 22-CV-01797-JSC, 2022 WL 4472069, at *6 (N.D.

27   Cal. Sept. 26, 2022).  Therefore, the requested damage amount under § 605 is tailored to the

28   specific misconduct at issue.  As to the conversion damages, the value of the property was the

United States District Court
Northern District of California

1    amount it would cost to broadcast lawfully, thus the damages are appropriate.  As a result, the sum

2    of money at stake is reasonable and thus this factor weighs in favor of granting default judgment.

3        **D.  Possibility of Dispute Concerning Material Facts**

4            There is no indication the material facts are in dispute.  The well-pleaded allegations in the

5    Complaint as to liability are deemed admitted.  *See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560

6    (9th Cir. 1977).  Additionally, Plaintiff's motion is strengthened by the declarations and affidavit

7    attached to the motion for default judgment.  (Dkt. No. 26-2-4.)  Therefore, this factor weights in

8    favor of default judgment.

9        **E.  Whether the Default was Due to Excusable Neglect**

10           "This factor favors default judgment where the defendant has been properly served or the

11   plaintiff demonstrates that the defendant is aware of the lawsuit." *Wecosign, Inc. v. IFG Holdings,*

12   *Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012).  Here, Defendants were properly served and

13   there are no other indications Defendant's default was due to excusable neglect. Therefore, this

14   factor weighs in favor of default judgment.

15       **F.  Policy Favoring Decisions on the Merits**

16           "Our starting point is the general rule that default judgments are ordinarily disfavored.

17   Cases should be decided upon their merits whenever reasonably possible."  *Eitel*, 782 F.2d at

18   1472.  Thus, the seventh *Eitel* factor, by definition, weighs against entering default judgment.

19   Here, "Defendant's failure to answer Plaintiffs' complaint makes a decision on the merits

20   impractical, if not impossible," making default judgment appropriate notwithstanding the policy

21   against it.  *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

22                                                                                ***

23

24           In sum, all factors weigh in favor of default judgment.

25   **III.    SCOPE OF RELIEF**

26           The Court will award damages under § 553, conversion, and costs and attorney's fees.

27

28

United States District Court
Northern District of California

11

**A.  Damages under Section 553**

Under § 553(c)(3)(A), Plaintiff may elect to recover actual damages or "an award of statutory damages . . . in a sum of not less than $250 or more than $10,000 as the court considers just."  When the violation was committed willfully and for commercial or private gain, the court may, in its discretion, increase the damages by no more than $50,000.  § 553(c)(3)(B).  Section 553 allows the recovery of full costs, including reasonable attorneys' fees.  § 553(c)(2)(C).  In determining damages under § 553, courts consider many factors including "use of a cover charge, increase in food price during programming, presence of advertising, number of patrons, number of televisions used, and impact of offender's conduct on claimant."  *J & J Sports Prods., Inc. v. Concepcion,* No. C 10-05092 WHA, 2011 WL 2220101 (N.D. Cal. June 7, 2011).  "Courts also consider whether a defendant is a repeat offender.  Additionally, courts look to the actual cost of a commercial license, defendant's incremental profits and the need to deter piracy."  *Coria*, 2015 WL 1089044, at *4 (cleaned up).  Many courts award statutory damages in an amount equal to the actual loss based on the licensing fee and enhanced damages in an amount equal to double the statutory award.  *See*, *e.g.*, *id.* at *5.

Here, Plaintiff is entitled to statutory and enhanced damages under § 553 because the Complaint, when taken as true, sufficiently states a claim for recovery under the statute and alleges the violation was committed willfully and for commercial gain.  (Dkt. No. 1 ¶ 28; Dkt. No. 26-4 ¶ 9.)

Plaintiff states the Program was broadcast to about 20 patrons on two televisions.  (Dkt. No. 26-1 at 16-17.)  The Court finds the violation warrants a low damages amount because there is no allegation of a cover charge and the allegations do not include increased food prices and advertising.  (Dkt. No. 26-2 at 2.)  Additionally, the small number of patrons present, the small number of televisions used, and lack of alleged prior offenses also weighs in favor of a low damages amount.  *Id.*  The Court accordingly awards statutory damages of $550.00 and enhanced damages of $1,100, totaling $1,650 in damages plus costs and reasonable attorney's fees.  This amount awards statutory damages equal to the licensing fee and enhanced damages of double the

1   licensing fee.  This amount will compensate Plaintiff for the loss it suffered as well as deter

2   Defendants from future violations.

3         **B.  Conversion**

4         Damages for conversion are based on the value of the property at the time of the

5   conversion.  Cal. Civ. Code § 3336.  Here, Plaintiff seeks $550.00 in damages for conversion, the

6   amount it would cost to broadcast the Program lawfully.  (Dkt. No. 26-4 ¶ 8.)  Therefore, the

7   requested damages as to conversion are appropriate as they are the value of the property at the

8   time of conversion.

9   **Conclusion**

10         For the reasons stated above, Plaintiff's motion for default judgment is GRANTED in part

11   DENIED in part.  Relief is GRANTED under § 553 for $1,650 as to Emelina's and Nunez and

12   Vasquez are jointly and severally liable.  Additionally, Plaintiff's request for relief for conversion

13   for $550.00 as to Emelina's is GRANTED, but Plaintiff's request for relief for conversion as to

14   Nunez and Vasquez is DENIED.  Therefore, as to Emelina's, Plaintiff is awarded total relief of

15   $2,200, and Nunez and Vasquez are jointly and severally liable for $1,650 of the total. Judgment

16   will be entered accordingly.

17         Plaintiff must file its motion for attorneys' fees and costs within 14 days of the entry of

18   judgment.

19         **IT IS SO ORDERED.**

20   Dated: July 13, 2023

21

22

23   JACQUELINE SCOTT CORLEY
     United States District Judge

*United States District Court*
*Northern District of California*

13